The single issue presented on this appeal is whether the trial court erred in granting the defendant's motion for judgment notwithstanding the verdict, after a jury verdict for the plaintiff in a dogbite case.
On January 18, 1980, appellant Neva Rucker was attacked and injured by a dog while picking up the afternoon paper from her yard. According to appellant, the attack lasted for approximately five minutes, during which time the dog pulled off her shoe and bit her foot. When appellant got free from the dog, she crawled into the house and called a doctor.
Mrs. Rucker contends that at the time of the attack, the dog, a red Irish setter, belonged to appellee Fred Goldstein. She claims that she identified the dog in question when it returned to her yard several weeks after the attack. At that time, a friend was able to get appellee's name from a tag on the dog's collar.
It is undisputed that Loraine Bowen, a neighbor of Mrs. Rucker, had called the owner of the dog on at least two occasions before the attack on Mrs. Rucker to complain about the dog. Bowen testified that she had seen appellee's dog chasing garbage men and running and barking at people; however, she admitted that she had never seen the dog display vicious tendencies. In her words, "He was just rambunctious." Bowen stated repeatedly at trial that she did not tell appellee of the dog's specific acts; rather, she only told him that the dog was a nuisance.
Because Bowen's testimony is the only evidence adduced at trial that might impute knowledge of the dog's vicious tendencies to the appellee, pertinent portions of her testimony are set out, as follows:
"DIRECT EXAMINATION
". . . .
 "Q. Mrs. Bowen, did on more than one occasion . . . you see the dog rush at and/or bark at people in the neighborhood?
"A. Yes, yes.
 "Q. And did you advise Mr. Goldstein of these activities when you spoke with him?
 "A. Not — no. I did not. I told him that the dog was a nuisance.
". . . .
"CROSS-EXAMINATION
". . . .
 "Q. Now, on the first occasion that you called Mr. Goldstein, did you tell him about the garbage, about his dog . . . littering the neighborhood?
"A. I don't remember whether I told him that or not.
 `Q. All right. But I believe you said just a moment ago when you were talking *Page 493 
to Mrs. Rucker's lawyer, you did not tell Mr. Goldstein that the dog had — was barking at people or jumping up on people; is that correct?
 "A. I never saw the dog jump up on people. He jumped — he came up to them running and barking like he was going to attack them. But I never saw the dog jump up on anyone. I didn't see that.
"Q. All right. Did the dog ever jump up on you?
 "A. No. I'm not afraid of the dog. He wouldn't have jumped up on me.
 "Q. All right. And when you told him to stop barking that day, did he mind you?
"A. Yes.
"Q. You never saw this dog bite anybody, did you?
"A. No.
"Q. And never saw the dog push anybody down?
"A. No, but he could easily have.
"Q. Well, but you never saw him do that, did you?
"A. No.
 "Q. And so you never told Mr. Goldstein that he was jumping up on people or anything like that, did you?
 "A. I told him he was a nuisance in the neighborhood."
Mr. Goldstein described his dog as a very gentle dog, the kind of dog that would let other dogs eat out of his bowl, one that would not bite if someone put a hand in his mouth. He said that when a stranger would come into the house, the dog would lie on his back with all four paws in the air.
Goldstein testified that he received friendly calls about his dog. He said that the dog would jog with three women that lived in the neighborhood, and that they would feed him and take him into their house. When questioned as to whether the women who jogged with the dog ever called to complain, the appellee responded:
 "A. No, they never complained. They loved the dog. As a matter of fact, I begged them not to feed him and things like that, and they did. They loved him and played with him. As a matter of fact, one of them wanted to buy him from me, one of the ladies."
In Owen v. Hampson, 258 Ala. 228, 62 So.2d 245 (1952), this Court held that the common law rule of negligence is still applicable to dogbite cases in Alabama. The early case ofDurden v. Barnett Harris, 7 Ala. 169, 170 (1844), set out the rule as follows:
 "It is said the owner of domestic animals, not necessarily inclined to commit mischief, such as dogs, horses, etc., is not liable for an injury committed by them, unless it can be shown that he previously had notice of the animal's mischievous propensity; or, that the injury was attributable to some neglect on his part. . . . From this it would seem to follow that it was necessary to alledge [sic] and prove a scienter." (Emphasis in original.)
There has been no marked change in the law in this area over the years. Since 1953, however, Alabama victims of dog attacks, in certain instances, have had the option of proceeding under a statute imposing liability on owners of dogs biting or injuring persons. Code 1975, §§ 3-6-1 to 3-6-4. Under those statutes, the injury must occur upon the property owned or controlled by the dog's master, or after the victim leaves this property and is immediately pursued therefrom by the dog. Additionally, the statute shifts the burden of proof of scienter. If the defendant is able to prove that he had no knowledge of his dog's vicious propensities, he will be liable only to the extent of the expenses actually incurred by the person so injured.
As noted previously, however, under the common law, scienter on the part of the owner must be alleged and proved by the plaintiff. The crucial issue is "whether the owner knows, or had reason to know, of the animal's dangerous propensities."Allen v. Whitehead, 423 So.2d 835 (Ala. 1982). If the plaintiff fails to meet the burden of proof, the defendant is not liable. *Page 494 
It is undisputed in this case that the attack on Mrs. Rucker happened off the owner's premises, some nine miles from appellee's home, so that this action is governed by the rules of common law negligence.
We hold that the trial judge was correct in granting defendant's motion for judgment notwithstanding the verdict. The jury did not have sufficient facts from which it could reasonably conclude that Fred Goldstein had knowledge, either actual or imputed, of the dog's dangerous propensity.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.