This is an appeal by Kevin David King and Nina King from a judgment made final pursuant to A.R.Civ.P. 54(b).
Kevin King, at age two and one-half, was bitten on the face by a dog belonging to neighbors, defendants John and Holly Breen. Kevin and his mother sued the Breens on June 9, 1987. The complaint contained a count alleging that the Breens had negligently kept a dog with known vicious propensities and had negligently allowed the dog to come into contact with Kevin, and a second count alleging that the Breens had mistreated and negligently cared for the dog, and had thereby caused it to have vicious and dangerous propensities. They filed an amended complaint on April 20, 1988, adding a claim based on strict liability under Alabama Code 1975, § 3-6-1.
On February 22, 1989, the parties stipulated that the pleadings were complete, that discovery was not yet completed, and that certain motions were pending. On March 1, 1989, a summary judgment was entered for the defendants as to counts 1 and 2, but it was denied as to count 3, the strict liability claim of the amended complaint. On March 24, 1989, the Kings filed a second amended complaint, adding count 4, a dangerous instrumentality claim, and count 5, an attractive nuisance claim. The trial court struck this second amended complaint, denied the Kings' motion to alter or amend its ruling, and entered judgment against the Kings on counts 1, 2, 4, and 5. The court made the summary judgment on counts 1 and 2 final and also made final the striking of the second amended complaint.
The defendants had chained their dog to an old automobile in their yard and allowed neighborhood children to come over and play with the dog. There was evidence that the area was overgrown with weeds and that the defendants did not feed the dog properly. Veterinarian records revealed that the chain collar had become embedded in the dog's neck, that there was pus under the collar, and that the neck emitted a foul odor. On the day of the attack, Kevin was playing in his yard and wandered over to the defendants' yard before his mother could stop him. Mrs. King testified that Kevin hugged the dog's neck because he had mistaken it for a dog he had once had. When Kevin hugged the dog, it bit him on the face and shoulder; the injuries left permanent scars on his face.
The issues on appeal are whether there was a factual dispute with respect to the claim of negligently keeping a dog with known vicious propensities; whether there is a cause of action for negligently caring for and mistreating a dog, so as to cause it to have dangerous propensities that led to someone's injury; and whether the trial court erred in striking the second amended complaint.
Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.;Fountain v. Phillips, 404 So.2d 614 (Ala. 1981). Because this action was filed on June 9, 1987, the "scintilla rule" applies (see Ala. Code 1975, *Page 188 
§ 12-21-12), and, thus, the summary judgment would have been proper only if there was not a scintilla of evidence to support the plaintiffs' allegations. To determine whether a scintilla of evidence exists, all reasonable inferences from the facts presented are to be construed most favorably to the nonmoving party. Chiniche v. Smith, 374 So.2d 872 (Ala. 1979).
Under the traditional common law concerning injuries inflicted by domestic animals, the plaintiff had to allege and prove that the animal's owner had prior knowledge of the animal's vicious propensities. Rucker v. Goldstein,497 So.2d 491 (Ala. 1986). The Kings argue that a prior incident between the dog and another neighborhood child, Chad Peed, furnishes a scintilla of evidence of a factual dispute with respect to the defendants' knowledge. On this prior occasion, the dog had escaped from a fenced area and jumped on Chad, who was three years old at the time, leaving a red mark on his face. The Breens submitted the affidavit of Chad's mother, who claimed that the dog was merely trying to get a sandwich that the child was holding. The boy's father, however, had considered the incident serious enough to report it to the police. Chad's parents informed the Breens of the incident and of the fact that the police had been contacted.
Further, the evidence submitted by the Breens in support of their summary judgment motion presents credibility issues requiring a jury determination. The Breens did not produce all their veterinarian records or mention a second veterinarian in their answers to interrogatories. The second veterinarian was the one who had discovered that the chain collar was embedded in the dog's neck. The affidavit of Vickie Marsh, a neighbor of the Breens, is also suspect. She testified that she was very familiar with the dog and that her four young children had played very aggressively with it, without the dog's ever reacting in a dangerous manner. However, she also testified that she talked to Mrs. King immediately after the incident and that Mrs. King stated that the dog was a nice dog, that Kevin would be fine, and that the incident was just an accident. This testimony conflicts with that of John and Dianne Freeman, who drove the Kings to the hospital. They testified that Mrs. King was emotionally upset and that she almost fainted. Due to the credibility issues and the factual dispute concerning the Peed incident, summary judgment was therefore incorrectly entered with respect to count 1.
With respect to count 2, the plaintiffs argue that the defendants' negligent mistreatment of the dog caused the dog pain and caused it to be abnormally sensitive. The plaintiffs claim that the dog's neck was painful and sensitive due to the defendants' neglect and that this had caused the dog to bite Kevin when he hugged the dog's neck.
The plaintiffs argue that there is a cause of action for injuries resulting from negligent care or mistreatment of animals, separate from and independent of the cause of action for injuries caused by negligently keeping an animal with known vicious propensities. They base this claim on Durden v. Barnett Harris, 7 Ala. 169 (1844), Rucker v. Goldstein, 497 So.2d 491
(Ala. 1986), Orr v. Turney, 535 So.2d 150 (Ala. 1988), and on § 518, Restatement (Second) of Torts (1977). They claim that this tort of negligent care or mistreatment would not require a showing of the scienter required by the tort of negligently keeping an animal with known vicious propensities or even require that the animal have dangerous propensities.
This Court in Rucker cited Durden for the applicable common law rule. The plaintiff in Durden had alleged that "the animals causing [the] injury, were accustomed to bite mankind; that this propensity was known to the defendants; and that, notwithstanding, they so negligently kept them that the injury resulted." Durden, 7 Ala. at 170. This Court held:
 " 'It is said the owner of domestic animals, not necessarily inclined to commit mischief, such as dogs, horses, etc., is not liable for an injury committed by them, unless it can be shown that he previously had notice of the animal's mischievous propensity; or, that the injury was attributable to some neglect on his *Page 189 
part. [Smith v. Pelah, 3 Strange 1265; Beck v. Dyson, 4 Camp. 198.] From this it would seem to follow that it was necessary to allege and prove a scienter.' "
497 So.2d at 493 (quoting Durden v. Barnett Harris, 7 Ala. 169,170 (1844)).
The plaintiffs claim that the language "or, that the injury was attributable to some neglect on his part" provides a separate cause of action that does not require proof of the owner's knowledge of the dog's dangerous propensities or that the animal have such propensities. This language, however, was clarified in Scott v. Dunn, 419 So.2d 1340, 1343 (Ala. 1982), in which this Court noted that the above phrase concerned "neglect in allowing animals with known dangerous propensities to run at large." Moreover, the English cases referred to inDurden provide that the owner must have knowledge that the dog was accustomed to bite. Smith v. Pelah and Beck v. Dyson, both cited supra in Durden. Citing these cases and Durden, this Court has held:
 "At common law, where an injury to another arises from carelessness in keeping domestic animals, which are not necessarily inclined to do mischief, . . . no recovery can be had against the owner, for an injury done by them, unless it is averred and proved that he knew their vicious propensities, and so carelessly and negligently kept them, that injury resulted to the plaintiff therefrom."
Smith v. Causey, 22 Ala. 568, 571 (1853) (citing Beck v. Dyson, supra; Smith v. Pelah, supra; Durden v. Barnett Harris, supra).
Thus, traditionally in Alabama, a person injured by a domestic animal has had to allege and prove that the animal's owner had knowledge of the animal's dangerous propensities that caused the harm. The language in Durden relied on by the plaintiffs does not provide a cause of action for injuries inflicted by animals negligently cared for by their owners if the owners do not have knowledge of any dangerous propensity of the animal.
The question remaining under count 2 is whether the plaintiffs have stated a cause of action under Orr v. Turney, supra, or § 518, Restatement (Second) of Torts. Section 518 reads as follows:
 "Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if (a) he intentionally causes the animal to do the harm, or (b) he is negligent in failing to prevent the harm."
The Restatement further states in comment (h):
 "One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. He is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm. Thus the keeper of even a gentle bull must take into account the tendencies of bulls as a class to attack moving objects and must exercise greater precautions to keep his bull under complete control if he drives it upon a public highway. So, too, the keeper of an ordinarily gentle bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings."
Dog owners should recognize the normal tendency of dogs to react aggressively to, or to attack, a person touching it in a painful area. In this case, the defendants knew they had placed the chain on the dog's neck. They left the chain on for such a length of time that it became embedded in the dog's neck. There is evidence that they had further mistreated the dog by not feeding it properly. The record also reveals that they allowed neighborhood children to play with the dog. Thus, a jury question is presented as to whether a reasonable person in the exercise of ordinary care would have realized the condition of the dog and kept it from coming into contact with children. Summary judgment *Page 190 
was therefore incorrectly entered on count 2.
This holding is not inconsistent with present Alabama law, which requires a showing that the owner has "knowledge of facts from which he can infer that the animal is likely to commit an act of the kind complained of." White v. Law, 454 So.2d 515
(Ala. 1984). Other courts have construed § 518 in this manner. In Westberry v. Blackwell, 282 Or. 129, 577 P.2d 75 (1978), the plaintiff charged the defendant with negligence under § 518. The plaintiff had been bitten by the defendant's dog as she walked toward the defendant's house. She visited with the defendant in her home, and as she left the dog bit her again. The court noted that the defendant knew the dog had bitten the plaintiff as she entered her home and held that a jury question was presented as to whether a reasonable person exercising ordinary care would have restrained the dog. Westberry,282 Or. at 133, 577 P.2d at 76-77. In Kathren v. Olenik, 46 Or. App. 713, 613 P.2d 69 (1980), the court observed:
 "We do not read the opinion in Westberry as imposing a duty on a dog owner to control or confine the animal absent knowledge or a basis for knowledge by the owner that the dog will behave in a potentially injurious manner. Negligence, in terms of an omission to confine or control an animal, is based on a duty to take reasonable precautions to prevent a foreseeable risk of injury by the animal. Negligent failure to control or confine a dog must be analyzed in terms of the knowledge on the part of the owner that the dog will cause the injury actually incurred by plaintiff if it is not controlled or confined."
The plaintiffs also argue that they have a cause of action under Orr v. Turney, supra. In Orr, this Court held that a landowner who "undertakes any affirmative conduct creating a danger to an unwitting licensee, independent and distinct from the condition of the premises, must give reasonable notice or warning of the danger or exercise reasonable or ordinary care to safeguard against that danger." Orr, 535 So.2d at 153. InOrr the defendant attempted to dispose of a pan of grease that had caught fire in her home. She tried to carry the pan down a flight of stairs, knowing that visiting children were playing at the bottom of the stairs. She dropped the pan, and the grease seriously burned one of the children. This Court reaffirmed W.S. Fowler Rental Equip. v. Skipper, 276 Ala. 593,165 So.2d 375 (1963), in holding that because of the defendant's "positive act creating a new danger" to a licensee, the defendant was required "to give . . . reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger." Orr,535 So.2d at 153 (quoting Fowler, 276 Ala. at 600, 165 So.2d at 382). InFowler, the defendant placed a dangerous obstacle across a highway it was constructing, and the plaintiff's vehicle struck the obstacle the next day. In Perry v. St. Jean, 100 R.I. 622,218 A.2d 484 (1966), cited by this Court in Orr, the plaintiff was injured when she fell from the defendant's horse. The plaintiff claimed that the defendant had negligently saddled and managed the horse. The court treated the defendant's negligence in inviting the guest to ride the horse as an activity rather than as the maintenance of a dangerous condition. Likewise, in Bradshaw v. Minter, 206 Va. 450,143 S.E.2d 827 (1965), the Court held that it was a jury question as to whether the defendant was guilty of negligent conduct in inviting or allowing the plaintiff to ride his horse without warning of the incident dangers.
Here the defendants engaged in affirmative conduct by chaining the dog to the car and allowing children to play with it. The defendants' conduct, however, is more in the nature of the maintenance of a dangerous condition on their land than the undertaking of an affirmative act. The alleged cause of the injury was leaving the dog chained to the car for such a length of time that the collar became embedded in the dog's neck and also the failure to adequately feed the dog during this time. This cause of action is governed by our decision in Tolbert v.Gulsby, 333 So.2d 129 (Ala. 1976), and is founded upon premises liability *Page 191 
rather than upon liability for personal injuries inflicted by domestic animals. In Tolbert, we adopted § 339, Restatement(Second) of Torts, which concerns liability for physical harm to trespassing children caused by an artificial condition on the land, and held that this section would apply to licensee children as well as to trespassing children. Section 339 has been applied to situations involving animals. In Hofer v.Meyer, 295 N.W.2d 333 (S.D. 1980), it was held that "whether a horse is an 'artificial condition' [on the land] within the meaning of . . . § 339 is . . . to be determined by the special facts in each case." The court further noted that the condition is said to be artificial when the condition is created by the action of man. Hofer, 295 N.W.2d at 336 (citing Clarke v.Edging, 20 Ariz. App. 267, 512 P.2d 30 (1973)). See alsoDeRobertis v. Randazzo, 94 N.J. 144, 462 A.2d 1260, 1267 (1983) ("[a]n abnormally dangerous domestic animal is like an artificial condition on the property" (citing Restatement(Second) of Torts § 512 (1977)); but see Gonzales v. Wilkinson,68 Wis.2d 154, 227 N.W.2d 907, 909-10 (1975) (a dog does not qualify as an "artificial condition . . . inherently dangerous to children" because it is not "artificially constructed") quoting other sources and citing Restatement (Second) of Torts
§ 339, comment d, which notes that the question of a landowner's liability for natural conditions is unresolved. Comment p to § 339 states that the burden of improving a natural condition to make it safe for children in most cases would be disproportionally heavy compared to the risk involved. It is for a jury to determine whether, under the facts of this case, the defendants' treatment of the dog created an dangerous condition, exposing them to liability under Tolbert v. Gulsby, supra.
Last, the plaintiffs claim the trial court erred in granting the defendants' motion to strike their second amended complaint. The amendment, which was filed on March 24, 1989, sought to add a fourth count based on a dangerous instrumentality theory and a fifth count based on an attractive nuisance claim. The dangerous instrumentality theory is governed by Tolbert v. Gulsby, supra, discussed above. The parties filed a pretrial stipulation on February 22, 1989, agreeing that the pleadings were complete, that discovery was not yet completed but was to be by May 1, 1989, and that the case could be set for trial in June 1989. Amendments to pleadings are to be freely allowed under A.R.Civ.P. 15 when justice so requires. Although under Rule 16 pretrial orders are to control the subsequent course of litigation, the liberal allowance of amendments under Rule 15 takes precedence over strict adherence to Rule 16. Huskey v. W.B. Goodwyn Co.,295 Ala. 1, 321 So.2d 645, 648 (1975). Allowing the amendment in this case would not unduly delay trial or prejudice the defendants. The facts upon which counts 4 and 5 were based were identical to the facts upon which count 2 was based. Therefore, no additional discovery would be required by these counts. Thus, the trial court incorrectly granted the defendants' motion to strike the plaintiffs' second amended complaint.
For the reasons stated above, we conclude that the trial court erred in entering summary judgment as to counts one and two of the complaint and in striking the amended complaint. The judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in part and concurs in the result in part.