This appeal presents one question: Did the trial court err in entering summary judgment in this negligence action on the ground that the plaintiff/workman assumed the risk of injury when he slipped on ice he admittedly knew was on the floor of a walk-in cooler-freezer he was repairing at the time?
 FACTS
The evidence presented on the summary judgment motion tended to show the following: Plaintiff Charles Ray Harris, while employed by Vollrath Refrigeration, Inc. (hereinafter "Vollrath"), went to Selma Street Elementary School, located in Dothan, to inspect a walk-in cooler-freezer unit situated in the school's lunchroom. Vollrath was the manufacturer of that particular walk-in cooler-freezer unit, which the defendant, Food Equipment Specialist *Page 1067 
(hereinafter "Food Equipment") had purchased and installed for the school.
Because Food Equipment allegedly did not install the unit properly, neither the cooler door nor the freezer door closed securely; consequently, water vapor in the air outside of the cooler door would enter the unit and condense, and that condensation would freeze and form ice on the floor and walls of the cooler.
The Dothan City School officials contacted Vollrath and Food Equipment about the problem, and Charles Harris and two Food Equipment employees were sent to the school in response to the complaint. Harris suggested to the school's lunchroom manager that all the contents contained in the cooler and freezer compartments be removed, but the lunchroom manager refused to accept Harris's suggestion, and the food was not removed. Two Food Equipment employees who were present also refused his request to remove the contents.
Harris elected to attempt the realignment of the cooler and freezer doors anyway. Even though two Food Equipment employees were present to assist Harris with the repairs, Harris performed most of the work. It was during Harris's attempted realignment of the freezer door that his accident occurred.
The facts tend to show that Harris lifted the freezer door frame and began to cross the cooler compartment, and that, as he walked across the floor with the door frame in his hands, he slipped upon some ice on the cooler's floor. As he fell backwards, he landed against some stacked boxes, injuring his back. He and his wife, Linda Harris, initially filed a complaint in the Circuit Court of Jefferson County against Food Equipment, the City of Dothan, and the Dothan City School Board, in which they alleged that negligent installation of the unit by Food Equipment had caused ice to form on the cooler compartment's floor. The Harrises also alleged that because Food Equipment, by and through its two employees who had been present at the school, had refused Harris's request to remove the contents of the cooler and freezer compartments, Harris became the servant of Food Equipment. They alleged that since Harris's relationship with Food Equipment had thereby been transformed into a servant/master relationship, Food Equipment had a duty to provide Mr. Harris with a safe place to work.
Food Equipment filed a motion to have the case transferred to the Circuit Court of Houston County; the trial court granted the motion to transfer. Later, Food Equipment filed a motion for summary judgment. In support of its motion for summary judgment, Food Equipment submitted the deposition of Harris, and the trial court, after review, granted the motion. In its order, the trial court stated that because Harris had observed and was aware of the icy conditions within the cooler compartment, he had assumed the risk of injury to himself when he attempted to carry the freezer door frame across the cooler compartment's floor. The trial court also found that there was no duty of care owed by Food Equipment to Harris to provide him with a safe working place. Due to a settlement agreement, the City of Dothan and the School Board were dismissed as defendants.
Because this action was filed prior to June 11, 1987, the effective date of Ala. Code 1975, § 12-21-12, the "scintilla rule" governs this Court's review of the summary judgment. This Court has stated:
 " 'A motion for summary judgment may be granted only when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Fountain v. Phillips, 404 So.2d 614, 618 (Ala. 1981). Furthermore, all reasonable doubts concerning a genuine issue of material fact must be resolved against the moving party. Couch v. Dothan-Houston County Airport Authority, Inc., 435 So.2d 14 (Ala. 1983).' "
Best v. Houtz, 541 So.2d 8, 9 (Ala. 1989) (quoting Cabaniss v.Wilson, 501 So.2d 1177, 1182 (Ala. 1986)). See Rule 56(c), A.R.Civ.P. Under the "scintilla rule," once the moving party has made a prima facie showing *Page 1068 
that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law, the burden shifts to the non-moving party to show that there is at least a scintilla of evidence in his favor that creates a genuine issue as to some material fact.
The evidence submitted by Food Equipment on its motion for summary judgment consisted of a deposition given by Harris. In that deposition, he admitted that he knew of the presence of ice on the cooler compartment's floor prior to his attempt to carry the freezer door frame across that floor. In that deposition, he testified as follows:
 "Q. Okay. And you think the ice that you — you had seen ice, hadn't you, there on the floor?
"A. Yes, sir.
 "Q. How many times had you been in and out of the freezer — before you slipped?
"A. Twice.
 "Q. Had you removed any of the ice off the floor while you were there?
"A. No, sir.
 "Q. Do you have any kind of tool for, you know, scraping ice off the floor like that?
"A. No, sir."
Later, in that same deposition, Mr. Harris further testified to the following:
 "Q. Okay. Are you familiar with the fact that when the cooler-freezer first came in [that] it did not meet the specifications that were called for by — in the bid by the Board of Education?
"A. No, sir, not as I recall.
 "Q. Okay. Now, have you gone around and done this type of work before?
"A. Yes, sir.
 "Q. And, so, you are familiar when one is not put together properly [that] you are likely to have condensation on the inside of it?
"A. Yes, sir.
 "Q. And you are likely to have ice on the inside of it on the floor?
"A. Yes, sir.
 "Q. And how many — on how many occasions, in your best judgment, have you gone into freezers where you are checking them in a similar condition to this one?
"A. I have never checked one as bad [as] this one.
 "Q. But, you have checked them with similar problems?
"A. Yes, sir.
 "Q. How many times have you checked them, in your best judgment?
 "A. I saw approximately a dozen or better, my best judgment.
 "Q. Okay. Of course, going in and out of these type freezers, you have to be very careful as you are moving around, do you not, because you may have ice on the floor?
"A. Yes, sir."
In addressing assumption of the risk as an affirmative defense to a negligence action, this Court stated the following:
 "In Alabama, the term 'assumption of risk' has been used to describe a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk. This so-called assumption of risk was dealt with in Baptist Medical Center v. Byars, 289 Ala. 713, 717, 271 So.2d 847, 849 (1972), wherein the Court observed:
 " 'The essential elements of contributory negligence in Alabama where the plaintiff assumed the risk or consequences by placing himself into a dangerous position are (1) knowledge by the plaintiff of the condition; (2) appreciation of the danger under the surrounding conditions and circumstances; and (3) failure of the plaintiff to exercise reasonable care in the premises, but with such knowledge and appreciation [as] to put himself into the way of danger.' (Citations omitted.)"
Cooper v. Bishop Freeman Co., 495 So.2d 559, 563 (Ala. 1986). The foregoing testimony given by Harris clearly showed that *Page 1069 
he had knowledge of the presence of ice on the cooler compartment's floor. Also, Harris's testimony revealed that heappreciated the risk associated with working in an area that had ice on the floor. Finally, in later testimony given by Harris in his deposition, the facts demonstrated that he failedto exercise reasonable care in the performance of his job, despite his knowledge and appreciation of the risk of injury facing him inside the cooler compartment. Specifically, Mr. Harris testified:
 "Q. How heavy approximately, in your judgment, was the freezer door frame?
 "A. I would estimate it weighed close to 60 pounds.
"Q. And your right foot stepped on some ice?
"A. Right.
"Q. Had you seen the ice?
"A. Yes, sir.
"Q. Did you see it when you put your foot on it?
"A. No, sir.
"Q. And your foot slipped?
"A. Yes, sir."
The trial court did not err when it held that Harris assumed the risk of injury as a matter of law when he carried the freezer door frame across the cooler compartment's floor; this is clear from Harris's own testimony.
Furthermore, we cannot find any evidence of the existence of any alleged master/servant relationship between Harris and Food Equipment. The plaintiffs' assertion that because the two Food Equipment employees who were present refused to comply with Harris's request to remove the contents of the cooler and freezer compartments, a request that the lunchroom manager also refused, they somehow exercised "control" over Harris's work to a degree that he became the servant of Food Equipment is novel, to say the least. Clearly, the evidence required the trial court's conclusion that Food Equipment did not retain the right to direct Harris's work. Harris was an employee of Vollrath, not Food Equipment.
Based upon the above stated reasons, the trial court's judgment is due to be affirmed.
AFFIRMED.
ALMON, ADAMS and STEAGALL, JJ., concur.
HORNSBY, C.J., concurs specially.