MADDOX, Justice.
The issue in this case is whether the appellant contractor is entitled to a jury determination of whether it suffered delay and disruption loss resulting from the discovery of asbestos during its renovation of a housing project owned by the appellee, Housing Authority of the Birmingham District (hereinafter referred to as “HABD”).
On November 10, 1981, Castle Construction Company and Tuskegee Lumber Company entered into a joint venture (hereinafter referred to as “Castle”) in order to submit a bid to obtain a construction contract with HABD. On December 9, 1981, Castle entered into a contract with HABD to renovate and modernize the Central City *188 Housing Project in Birmingham, Alabama. This contract made Castle the general contractor for the project. Castle then contracted with subcontractors Mid-Tex Mechanical, Inc., and Quality Electrical Services, Inc. An architectural firm, The Owens and Woods Partnership, provided the plans and specifications for the renovation, pursuant to its separate contract with HABD.
HABD gave notice to Castle to begin work on January 4, 1982. The time for completion of the renovation, as set forth in the contract, was established at 920 calendar days from the inception of the work, i.e., July 11, 1984. Castle began renovations on January 4, 1982, but experienced many delays within the first six months. In July 1982, HABD informed Castle that its progress was unacceptable and expressed its concern that Castle was not properly coordinating or supervising its subcontractors. Later in July 1982, the Jefferson County Department of Health notified Castle that asbestos was present in each building of the Central City Housing Project. On July 30, 1982, Castle suspended all work in the asbestos-contaminated areas and advised Owens and Woods in writing of the delay that would result. Owens and Woods responded by changing the project specifications to provide for the asbestos removal, and HABD, Owens and Woods, and Castle agreed to two change orders that afforded Castle the direct costs of the asbestos removal. Castle notified Owens and Woods, however, that it would not know the full extent of its delay costs until the completion of the project.
On July 5, 1984, Castle presented HABD with a claim for delay costs associated with the asbestos removal, costs it claimed were suffered in addition to those direct costs for the asbestos removal. HABD denied Castle’s claim and on May 10, 1985, Castle sued HABD for breach of contract. Castle alleged as damages the increased costs that it claimed it suffered as a result of the delay and disruption, plus similar costs incurred by its subcontractors, Mid-Tex and Quality Electric. On July 8, 1988, Castle amended its complaint to add The Owens and Woods Partnership, Kenneth Owens, and F.D.R. Woods, alleging that they had breached their contractual obligations to HABD and that Castle, as a third-party beneficiary of that contract, had suffered loss as a direct result. Castle also alleged that Owens and Woods, by failing to discover the asbestos before Castle entered into its contract with HABD, had failed to design the project to conform with applicable laws and regulations regarding asbestos removal and that Owens and Woods had breached an implied warranty to provide sufficient and accurate project plans and specifications.
HABD and Owens and Woods moved for a partial summary judgment, and HABD filed a counterclaim against Castle, alleging fraud. Castle then moved for a partial summary judgment on HABD’s fraud counterclaim. The trial court denied Castle’s motion for partial summary judgment as to HABD’s fraud counterclaim, but entered a summary judgment in favor of HABD on claims for Mid-Tex and Quality Electric. The trial court also entered a summary judgment in favor of HABD and Owens and Woods with regard to Castle’s breach of contract claims. Castle appealed each summary judgment, and this Court granted Castle’s motion to consolidate those appeals. The trial court entered a 54(b), Ala.R.Civ.P., finding of finality as to those summary judgments and continued HABD’s fraud counterclaim.
Initially, we must determine whether the trial court appropriately entered the summary judgment in favor of HABD and Owens and Woods with regard to Castle’s claims for delay damages. Summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; King v. Breen, 560 So.2d 186 (Ala.1990). In determining the existence or absence of a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So.2d 779 (Ala.1990). However, this Court’s reasoning is not limited to that applied by the trial court. Hill *189 v. Talladega College, 502 So.2d 735 (Ala.1987).
Under the “scintilla rule,” applicable to actions pending on June 11, 1987, as this action was, once the party moving for summary judgment has made a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law, the burden shifts to the nonmoving party to show that there is at least a scintilla of evidence in his favor that creates a genuine issue as to some material fact. See Harris v. Food Equipment Specialist, Inc., 559 So.2d 1066 (Ala.1990).
Castle alleged in its complaint against HABD and Owens and Woods that it suffered loss because it was prevented from completing the renovation of the housing project ahead of schedule. Castle informed HABD that it proposed to complete the project 51 days earlier than the scheduled completion date set out in their contract and that the discovery of the asbestos and the resulting delays prevented it from completing the project until 102 days after its projected early completion date. Thus, Castle claims that it is entitled to compensation, delay damages, and related disruption and acceleration costs. Castle further asserts that HABD and Owens and Woods should have discovered the asbestos prior to receiving bids on the project, and that doing so would have allowed Castle to accurately determine the amount of time, work, and materials necessary to complete the project.
HABD maintains that any changes in the work and the payment for the costs of extra work were specifically provided for in its contract with Castle; that the asbestos was an unknown, latent condition as defined in the contract; that HABD paid Castle for the cost of removing the asbestos; and that there is no evidence that the required removal of the asbestos caused Castle to suffer any delay or disruption loss not already compensated for by HABD pursuant to their contract.
In Metropolitan Paving Co. v. United States, 325 F.2d 241, 163 Ct.Cl. 420 (1963), a case cited by each party to this appeal, the court stated that although the government had no obligation to help a contractor finish early, it could not hinder or prevent a contractor’s early completion without incurring liability. However, the court continued by explaining that a contractor must show that it would have finished early but for the government’s delays. See G.M. Shupe, Inc. v. United States, 5 Cl.Ct. 662 (1984); Coley Properties Corp. v. United States, 593 F.2d 380, 219 Ct.Cl. 227 (1979); and Gardner Displays Co. v. United States, 346 F.2d 585, 171 Ct.Cl. 497 (1965).
Although Castle maintains that HABD’s failure to determine the existence of asbestos prior to the beginning of the project caused Castle and its subcontractors to suffer delay and disruption loss, a review of the record reveals no evidence that HABD or Owens and Woods had knowledge of the asbestos or that they in any way hindered or prevented Castle from finishing its work ahead of schedule.
The nature of a contract is determined by its terms and conditions. Grass v. Ward, 451 So.2d 803 (Ala.1984). Castle’s contract with HABD clearly provides for the changes required by the discovery of the asbestos. Paragraph 8 of the contract covering “changes in the work” states the following:
“b. .. .Any change in the work shall be ordered and the adjustment of the contract price or time shall be determined by one of the following methods:
“Method 1—Adjustment before Performance. ...
“Method 2—Adjustment after Performance. ...
“The Contractor shall keep an accurate current account of such work and present it in such form, and substantiated by such supporting papers as the Architect may, require. Upon completion and determination of the cost, a Change Order shall be issued establishing the increase or decrease in the contract price or contract time.
[[Image here]]
*190 “e. The cost shall include all direct and necessary production costs of the work itself....”
Paragraph 9 of the contract states:
“b. Should the Contractor encounter subsurface or latent conditions at the site materially differing from those provided for in this Contract, or unknown physical conditions differing materially from those inherent in work of the character provided for in this contract, he shall promptly, and before such conditions are disturbed, notify the LHA [HABD] in writing_ [Emphasis added.]
[[Image here]]
“e. If, on the basis of available evidence, LHA [HABD] determines that an adjustment of the contract price or time is justifiable, the procedure shall then be as provided herein for ‘changes in the work.’ ”
HABD maintains that it was not aware of the presence of the asbestos before it was discovered by the Jefferson County Department of Health. There is no evidence to contradict this assertion. In other words, HABD states that the asbestos was a latent and unknown condition discovered during the renovation and was therefore covered by the change order provisions of the contract. When the asbestos was discovered, Castle submitted two change order requests to HABD. Pursuant to change orders No. 9 and No. 11, HABD paid Castle $101,738.97 and $30,162.89 respectively for the asbestos removal. These change orders, signed by HABD’s contracting officer, Albert Rohling; Kenneth Owens of The Owens and Woods Partnership; and Castle’s project manager, Robert Ster-nenberg, stated that “all claims against the Local Authority [HABD] which are incidental to or as a consequence of the aforementioned change are satisfied.”
Pursuant to their contract, HABD paid Castle for the additional work required as the result of the discovery of the asbestos. Nonetheless, Castle argues that it reserved its right to claim damages for delay loss at a later time. The only delay loss that we can discern would be attributed to the time that was required for HABD and Castle to agree upon the change orders compensating Castle for the removal of the asbestos. We have searched the record and have found no evidence that HABD or Owens and Woods attempted to hinder Castle or to prevent Castle from completing the renovations ahead of schedule, as Castle had planned.
There is no doubt that the discovery of asbestos and the time required to specify the means for its required removal, along with the time taken to accomplish the change orders, caused the delay claimed by Castle. Castle suggests that HABD and Owens and Woods should be responsible for damages for the loss from the delay caused by the latent disco.very of the asbestos. This record does not show that Castle is entitled to such alleged delay damages.
We hold that the trial court did not err in finding that the delay costs resulting from the discovery of latent conditions was adequately provided for in paragraphs 8 and 9 of Castle’s contract with HABD. Castle alleges that the discovery of the asbestos forced it and its subcontractors to continue on the job longer than they had anticipated, but the record shows that Castle was compensated for the removal of the asbestos by the terms of its contract with HABD. Castle has not shown that the trial court erred in holding that Castle was not entitled to delay damages. Castle argues that there was evidence presented regarding the costs of delay. There was, but each of these delay costs was attributable to the discovery and removal of the asbestos and there was no evidence of any delay costs not attributable to the removal of the asbestos, a “latent defect” provided for in the contract. For the foregoing reasons, the summary judgment entered in favor of HABD and Owens and Woods with regard to Castle's claim for delay damages is affirmed.
Castle also argues that it is authorized to pursue claims against HABD and Owens and Woods for loss suffered by its subcontractors as a result of the alleged breach of contract by HABD and Owens and Woods. See Algernon Blair v. United States, 90 *191 Ct.Cl. 71 (1942). Pursuant to language in Castle’s subcontracts, Castle included the claims of its subcontractors in its suit against HABD and Owens and Woods. Castle argues that its damages include any liability to its subcontractors that it has incurred as a result of the alleged breaches of contract by HABD and Owens and Woods.
According to the affidavit of the project manager, Robert E. Stemenberg, subcontractors Mid-Tex and Quality Electric submitted claims to Castle for delay and disruption damages based on the discovery of asbestos and resulting delays. Thus, claims Castle, it is obligated to bring these claims against HABD and Owens and Woods. We reiterate that the record is devoid of any evidence of delay or disruption loss suffered by either Castle or its subcontractors as a result of any action by HABD or Owens and Woods. The discovery of the asbestos was clearly a “latent defect” as defined in the contract, and the change orders entered into between HABD and Castle compensated Castle and its subcontractors for the additional labor and materials required for its removal. Accordingly, we also hold that Castle is not entitled to delay or disruption damages from HABD or Owens and Woods on behalf of its subcontractors.
For the foregoing reasons, the judgments entered by the trial court are affirmed.
1900327 AFFIRMED.
1900328 AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.