10 So.3d 576 (2008)
Henry SIMMONS and Colida Simmons
v.
Willie CARWELL and Geico Indemnity Insurance Company, Inc.
2070290.
Court of Civil Appeals of Alabama.
October 24, 2008.
Rehearing Denied December 5, 2008.
*577 Michael J. Gamble of The Gamble Law Firm, Dothan, for appellants.
*578 S. Mark Dukes of Nix Holtsford Gilliland Higgins & Hitson, P.C., Montgomery, for appellee Willie Carwell.
William L. Lee III and William W. Nichols of Lee & McInish Attorneys, P.C., Dothan, for appellee Geico Indemnity Insurance Company.
MOORE, Judge.
Henry Simmons and his wife, Colida Simmons, appeal from a summary judgment in favor of Willie Carwell and Geico Indemnity Insurance Company, Inc. We affirm in part and reverse in part.

Procedural History
The Simmonses filed a complaint on June 12, 2006, in which they alleged that Carwell had negligently or wantonly caused his automobile to roll unoccupied down a sloped driveway creating a sudden emergency that prompted Henry Simmons ("Henry") to enter the vehicle to try to stop it. Henry did not succeed in his effort, and the automobile plunged into a ravine causing Henry injuries and resulting in loss of consortium to Colida Simmons ("Colida"). The Simmonses further alleged that Geico provided the Simmonses underinsured-motorist coverage and that they were entitled to benefits under that coverage on account of their injuries. Carwell and Geico filed answers to the complaint, denying liability and asserting various affirmative defenses.
Geico filed a motion for a summary judgment on June 12, 2007. Carwell filed a motion for a summary judgment on July 2, 2007. The Simmonses filed their response to the summary-judgment motions on July 27, 2007. After a hearing, the Pike Circuit Court ("the trial court") entered a summary judgment for Carwell and Geico on October 15, 2007. The Simmonses filed a timely notice of appeal to the supreme court on November 26, 2007; that court transferred the case to this court, pursuant to § 12-2-7, Ala.Code 1975, on January 7, 2008.

Facts
The deposition testimony and other evidence submitted in support of or in opposition to the summary-judgment motions reflect the following. On July 4, 2005, Carwell and his wife attended a barbeque hosted by the Simmonses at the Simmonses' home in Banks. As they were leaving the event, Carwell accidentally backed his automobile onto a concrete marker in the grassy area between the Simmonses' mobile home and the road. Carwell and his wife exited the vehicle while the engine was still running and without assuring that the automobile was taken out of the driving gear, leaving the driver's and front-seat passenger's doors open. Hearing a "commotion," Henry came around from the back of his home to find Carwell standing at the rear of the automobile attempting to lift the vehicle off the marker.
Carwell succeeded in dislodging the automobile, but, once free, the vehicle began rolling forward slowly down the slope of grass beside the Simmonses' home. At that time, the other guests had already left the barbeque and the only persons on the property were the Carwells, the Simmonses, and, according to some testimony, Colida's children. Colida was busy moving the Simmonses' vehicles back onto the Simmonses' property from the location they had been taken to clear room for the barbeque guests to park. Henry, however, did not know Colida's exact location; he knew only that she was "somewhere in the area." The record does not reveal the location of the children other than the testimony of Carwell's wife that the children were in the process of "getting ready to go."
*579 Once he observed the automobile rolling slowly and unoccupied at the top of the slope, Henry, without any request, jumped into the vehicle through the open passenger's door. The automobile began picking up speed as it headed down the slope. Henry attempted to push the gear shift into the park position, but the transmission only made a "clack, clack, clack" noise. Henry then pressed the brake pedal with his hand and foot. Henry was unable to bring the car to a stop, and it rolled down the slope into a kudzu-filled ravine. The automobile ended up stopped, nose down, at or near the bottom of the 25- to 30-foot-deep ravine. Colida observed the downward path of the automobile, but she testified that she had never believed she was in danger of being struck by the vehicle. As it turns out, the path of the automobile did not come close to any person.
Henry testified that, in attempting to stop the runaway automobile, he was just "trying to do" what he "thought was right." He said he had acted to prevent bodily harm to others. Colida testified that Henry had later told her that he wanted to stop the vehicle to prevent it from hitting any of their vehicles that were parked down the slope.

Issues
Carwell and Geico moved for a summary judgment on the ground that Henry's act of getting into the automobile was a superseding and intervening cause of his and Colida's injuries and, additionally, that the defenses of contributory negligence and assumption of the risk barred their recovery. Carwell and Geico further argued that there was no evidence to support the Simmonses' wantonness claim. The trial court entered a summary judgment on all counts of the complaint without specifying its reasons. On appeal, the Simmonses argue that the trial court erred in entering the summary judgment.

Standard of Review
"`"We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:
"``"We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.'"'
"General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala.2002) (quoting American Liberty Ins. Co. v. AmSouth Bank 825 So.2d 786, 790 (Ala.2002))."
Ex parte Essary, 992 So.2d 5, 8-9 (Ala. 2007).

Analysis

Intervening and Superseding Cause
Alabama law provides:
"`An intervening cause which is set in operation by an original negligent act, or which is a normal response to the stimulus of a situation created by such act, generally will not relieve the original *580 wrongdoer of liability.' Stated differently, `[a]n intervening act does not become a superseding cause if it is a normal response to the stimulus of a situation created by the negligence of another, and the manner in which it is done is not extraordinarily negligent.' 65 C.J.S. Negligence § 111(5) (1966). Restatement (Second) of Torts § 443 (1965)."
Hilburn v. Shirley, 437 So.2d 1252, 1254 (Ala.1983). In Hilburn, a tractor-trailer driver claimed that another driver's vehicle had negligently darted in front of his vehicle causing a collision. Following the accident, the tractor-trailer driver put on his air brakes and "jumped out of the truck" about six feet to the ground. 437 So.2d at 1253. The tractor-trailer driver testified that he had not used the tractor's steps because he was in a hurry to get to the other vehicle to confirm that the other driver was safe. Id. In making the jump, the tractor-trailer driver injured his lower back, requiring surgery. Id. The circuit court entered a summary judgment on the theory that the impulsive act of jumping out of the tractor's cab was the intervening and superseding cause of the tractor-trailer driver's injury. Id. On appeal, the supreme court reversed the summary judgment, stating:
"We think a jury issue is made on the question of whether the plaintiff's jumping out of his vehicle immediately following the collision was a natural and normal response flowing from the defendant's alleged negligence. At least one court has addressed the precise issue and observed:
"`[I]t has long been settled that the chain of causation is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence, and such normal reaction has been held to include the instinct toward self-preservation, Scott v. Shepard, 2 W.Bl. 892 (the lighted squib case), and the equally natural impulse to rush to others' assistance in emergency....'
"New York Cent. R. Co. v. Brown, 63 F.2d 657, 658 (6th Cir.1933).
"In Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976), we stated:
"`This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for the consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably have been foreseen. If so, the causal chain is not broken.'
"336 So.2d at 1339.
"We are unwilling to hold as a matter of law that it was or was not reasonably foreseeable that the driver of a vehicle involved in a collision might suddenly jump from it and injure himself in an effort to render assistance to another driver whose acts may have caused the accident. This is a matter peculiarly within the province of a jury."
Hilburn, 437 So.2d at 1254.
As Hilburn amply illustrates, if a jury could reasonably infer from the evidence that a plaintiff injured himself or herself in reacting normally to an abnormal situation caused by the negligence of the defendant, then the court may not find as a matter of law that the plaintiff's actions constituted an intervening and superseding cause of his or her injury. Thus far, that general principle has not been applied in any reported Alabama cases to the specific type of situation involved in this case, but courts of other states have concluded that personal injuries resulting from an attempt to stop a runaway vehicle are not the product of an intervening and superseding cause.
*581 In Henjum v. Bok, 261 Minn. 74, 110 N.W.2d 461 (1961), a gasoline truck began moving forward while the driver was pumping gas from it. The plaintiff noticed the movement when the driver pointed at the front of the truck. The plaintiff instantly darted to the cab in an effort to stop the vehicle. While trying to get into the cab of the truck, the plaintiff slipped and fell and the wheels of the truck ran over one of his legs. 261 Minn. at 74-75, 110 N.W.2d at 461-62. Easily finding that the driver had negligently failed to secure the truck from rolling, 261 Minn. at 75, 110 N.W.2d at 462, the court addressed the defendant's "primary contention ... that the conduct of plaintiff, in attempting to stop the truck, was an intervening and superseding cause of the accident." 261 Minn. at 76, 110 N.W.2d at 462. After reciting general principles of the law regarding superseding and intervening causes, which are consonant with current Alabama law, the court said:
"In any event, the intervening act, in order to be a superseding cause, must be independent in the sense that it must not be stimulated by the defendant's conduct. In the instant case the evidence supports the conclusion that the conduct of plaintiff was a normal reaction to the stimulus created by the negligent conduct of [the driver] in failing to properly set the brakes on the truck. Consequently, regardless of whether plaintiff's conduct was in itself negligent, it cannot be said, as a matter of law, to have constituted an efficient, intervening, superseding cause of the accident and the injuries sustained."
261 Minn. at 76, 110 N.W.2d at 462-63 (footnote omitted).
Likewise, in Green v. Britton, 22 Conn. Supp. 71, 160 A.2d 497 (Conn.Super.Ct.1960), the court considered whether a plaintiff who tried to stop an unattended automobile from rolling down an incline in a shopping-plaza parking lot could recover for the injuries the plaintiff received during the effort. The court held that "[w]hether the plaintiff's conduct was justified or constituted a new intervening cause of her injuries is a question of fact for the trier." 22 Conn.Supp. at 73, 160 A.2d at 499.
Based on the principles set out in Hilburn, and the persuasive authority applying those principles to the exact context present in this case, we conclude that whether Henry's actions in attempting to stop the runaway automobile constituted an intervening and superseding cause is a question of fact to be decided by a jury, not a question of law for the court to be decided by summary judgment. A reasonable jury could conclude that in getting into the Carwell automobile to try to stop its uncontrolled descent Henry merely reacted normally to the abnormal situation placed before him.

Contributory Negligence and Assumption of Risk
Contributory negligence is nothing more than a failure to act as an ordinary prudent person would act with knowledge and appreciation of the dangerous conditions confronting him or her. See Wallace v. Alabama Power Co., 497 So.2d 450, 457 (Ala.1986). Assumption of the risk is "`a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk.'" Harris v. Food Equip. Specialist, Inc., 559 So.2d 1066, 1068 (Ala. 1990) (quoting Cooper v. Bishop Freeman Co., 495 So.2d 559, 563 (Ala.1986)).
The standard of care that a person must use to protect his or her own safety and well-being depends on the attendant *582 circumstances. Under the rescue doctrine, Alabama law protects those injured when attempting to protect other persons from imminent peril by holding that the injured person's conduct may be a bar to recovery only if "the act of the rescuer [i.e., the injured person] is manifestly rash and reckless to a man of ordinary prudence acting in emergency." Seaboard Air Line Ry. Co. v. Johnson, 217 Ala. 251, 254, 115 So. 168, 170 (1927). Alabama law recognizes that "a man of ordinary prudence acting in emergency," id., "is not held to the same correctness of judgment and action that would apply if he had had the time and opportunity to consider fully and choose the best means of escaping peril or preventing injury." Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 727 (Ala.1990). Alabama law further holds:
"Questions of contributory negligence and assumption of the risk are normally questions for the jury. Ford v. Bynum Livestock & Comm'n Co., 674 So.2d 600 (Ala.Civ.App.1995). Only when the facts are such that all reasonable persons must draw the same conclusion does contributory negligence become a question of law for the court. Wyser v. Ray Sumlin Constr. Co., 680 So.2d 235 (Ala. 1996)."
Gulf Shores Marine Indus., Inc. v. Eastburn, 719 So.2d 238, 240 (Ala.Civ.App. 1998).
In this case, Carwell and Geico argue that Henry should not be subject to a lowered standard of care because no one was in actual danger from being struck by the runaway automobile when he acted. However, the rescue doctrine applies even though the person being rescued is not in actual peril "so long as there is `"a reasonable belief that some person [was] in imminent peril."'" Trapp v. Vess, 847 So.2d 304, 307 (Ala.2002) (quoting Ellmaker v. Goodyear Tire & Rubber Co., 372 S.W.2d 650, 658 (Mo.Ct.App.1963)).
In Franklin v. Lowe, 389 P.2d 1012 (Wyo.1964), the Wyoming Supreme Court rejected the identical argument advanced by Carwell and Geico in this case:
"Appellee answers that uncontroverted facts make it plain there was no sufficient imminence of peril to persons or property; there is no evidence that plaintiff had any cause to fear or apprehend danger to either persons or property; that even in an attempted rescue plaintiff was still required to exercise ordinary care for his own safety; and therefore, plaintiff's conduct being rash and imprudent, his recovery in any event was barred."
389 P.2d at 1013. In that case, the plaintiff was injured when he attempted to stop an unoccupied jeep rolling down the street in front of his house. 389 P.2d at 1012. The court said matter-of-factly that "[a] 3500 pound jeep rolling unattended upon an inclined street was sufficient evidence of imminent peril to both persons and properties." 389 P.2d at 1013. The court concluded: "Under the circumstances described by the evidence in the instant case, a jury might properly conclude a reasonable person would not have stood idly by and let the jeep roll on because of the danger it could injure either persons or property." 389 P.2d at 1014.
Similarly in Bok, supra, the Minnesota Supreme Court rejected an argument that the lower court had erred in instructing the jury on the rescue doctrine because, "among other things, the truck was not in fact headed for any building or other property, nor was the appearance of danger so imminent as to leave no time for deliberation." 261 Minn. at 77, 110 N.W.2d at 463. The court said:
"The so-called rescue doctrine does not affect the ordinary standard of care. *583 The doctrine merely indicates that, where an attempt is being made to save human life or property, a reasonably prudent person will take greater risks than might ordinarily be justified....
"In the instant case we have a situation where an unattended gasoline truck, partially loaded with inflammable gasoline, was rolling downhill in the vicinity of plaintiff's buildings. While the evidence regarding the speed of the truck was conflicting, plaintiff testified that it was moving at a `good, fast walk.' Whether the truck would have actually struck a building or otherwise destroyed property is not controlling if the attendant circumstances created the apprehension of danger. In almost any situation an uncontrolled vehicle in motion, particularly one of this kind, creates such apprehension. Common sense alone would almost seem sufficient to establish that plaintiff's reaction was instinctive and one to be expected in such a dangerous situation. Certainly we should not say that all reasonable men would have stood by and let the truck roll on."
261 Minn. at 77, 110 N.W.2d at 463 (emphasis added; footnotes omitted).[1]
Finally, in Green, supra, the complaint alleged that the plaintiff had observed the unoccupied automobile rolling toward her down an incline in the shopping-plaza parking lot. The plaintiff then pulled her car sharply to the left out of harm's way, got out of the car, ran to the rolling vehicle, opened the door, jumped in, and brought the runaway automobile to a stop, injuring herself in the process. The court said:
"It is not alleged in the complaint in so many words that the plaintiff was in danger, or believed she was in danger, or that anyone was in danger. However, the duty to use due care is bounded by the foreseeable range of danger. Harper & James, Law of Torts § 18.8. The negligent failure to properly brake an automobile in a parking lot, on an incline, involves a realizable and an unreasonable risk of causing harm to a class of persons of which the plaintiff was a member. Those using the parking lot and those approaching the parking lot in its driveway were among the persons affected.
"In their brief defendants urge that the plaintiff Caroline Green is a complete volunteer, and that the so-called `rescue doctrine' is not before the court. This claim is not well founded. The demurrer admits the well-pleaded facts that the Britton automobile was negligently parked, not braked, and that it rolled down the incline in the parking lot, in the direction of the plaintiff's car. The plaintiff responded to this situation. `Danger invites rescue.' `The act, whether impulsive or deliberate, is the child of the occasion.' (Cardozo, J.) Wagner v. International Ry. Co., 232 N.Y. 176, 181, 133 N.E. 437, 19 A.L.R. 1 [(1921)]; Zeechin v. Cornelio, 17 Conn. Supp. 20 [(1950)]; Restatement, 2 Torts §§ 442-445."
22 Conn.Supp. at 72-73, 160 A.2d at 498-99.
As those cases illustrate, the bare fact that Carwell's automobile was rolling unoccupied down an incline next to the Simmonses' mobile home was sufficient in itself to create an apprehension of imminent danger to persons in the general *584 area, whether in the direct path of the automobile or not. An uncontrolled automobile rolling downhill can veer unpredictably in any downward direction. When coming to a crashing halt, the automobile can burst into flame. A jury could readily conclude that a reasonable person, cognizant of such well-known dangers, would not necessarily stand idly by when he or she has an opportunity to get into the automobile while it is moving slowly and arrest its impending descent.
Moreover, in this case, Henry testified that he knew Colida was on the premises moving other vehicles and that he did not know precisely where she was. Some testimony also indicates that Colida's children were also on the property in an unknown location. Fortunately, the route of the runaway automobile did not actually place Colida or anyone else in imminent danger. In Franklin, the plaintiff's two-and-one-half-year-old child was playing on the plaintiff's premises when the plaintiff first observed the jeep rolling unattended down the street. 389 P.2d at 1012. The opinion in Franklin did not indicate that the jeep was ever heading in the child's direction, but the court nevertheless concluded that the plaintiff acted to protect persons in imminent peril. 389 P.2d at 1013.
Again, under Alabama law, all that is required is a "`"reasonable belief that some person [was] in imminent peril."'" Trapp, 847 So.2d at 307. Hence, based on the persuasive authority on point, the evidence presents a jury question as to whether Henry should be considered a rescuer and, if so, whether his actions were rash and reckless or reasonable given the emergency circumstances presented.

Wantonness
Alabama Code 1975, § 32-5A-50, provides:
"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key from the ignition, effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway."
From the undisputed facts in the record, it is evident that Carwell acted negligently in exiting his vehicle without complying with § 32-5A-50 or otherwise securing the vehicle from moving while unoccupied. At the trial-court level, neither Carwell nor Geico argued that they were entitled to a summary judgment on the ground that Carwell had acted reasonably under the circumstances. They did, however, maintain that Carwell did not act wantonly.
In their brief to this court, the Simmonses argue that the trial court erred in entering a summary judgment on the wantonness claim, citing additional evidence indicating that Carwell was tired from working all day and had drank an unstated amount of beer before the accident; however, a close review of their response to the summary-judgment motions reveals that the Simmonses did not raise that argument in the trial court. In fact, the Simmonses did not make any argument regarding the wantonness claim. Although we review a summary judgment de novo, we nonetheless "`can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.'" Ladas Land & Dev., Inc. v. Merritt & Walding Props., L.L.P., 978 So.2d 55, 59-60 (Ala.Civ.App.2007) (quoting Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000)) (emphasis omitted).
For the foregoing reasons, we affirm the summary judgment as to the wantonness *585 claim. As to the remaining claims, we reverse the summary judgment and remand the case to the trial court with instructions to conduct further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, J., concurs.
BRYAN, J., concurs in the result, with writing.
THOMAS, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, without writing.
BRYAN, Judge, concurring in the result.
In my opinion, the holdings of the main opinion are justified by the law of Alabama regarding intervening and superseding cause, contributory negligence, and assumption of the risk, and, therefore, the main opinion's reliance on caselaw from jurisdictions other than Alabama is unnecessary.
NOTES
[1] By citing this excerpt from Bok, we do not suggest that the rescue doctrine should be extended to cases in which the injured party was acting only to protect property. The excerpt is intended to illustrate only that the mere presence of a runaway automobile is sufficient to create a reasonable apprehension of danger.